**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Brian MELANCON, Defendant–Appellant.**

**No. 91–4627.**

United States Court of Appeals, Fifth Circuit.

Sept. 3, 1992.

Rehearing and Rehearing En Banc Denied Oct. 8, 1992.

Susan G. James, and Jeffery C. Duffey, Montgomery, Ala., for defendant-appellant.

Paul E. Naman, Asst. U.S. Atty. and Bob Wortham, U.S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before JOLLY, and DUHÉ, Circuit Judges, and PARKER, Chief District Judge.[1]

DUHÉ, Circuit Judge:

Defendant-Appellant Brian Melancon seeks review of his sentence to 108 months' imprisonment for conspiring to distribute methylenedioxymethamphetamine. Because Melancon waived his right to appeal as part of his plea agreement, we dismiss.

Appellant was indicted for conspiring to distribute methylenedioxymethamphetamine (MDMA or "ecstasy") in September 1990. Appellant reached a plea agreement with the Government by July 1991. Pursuant to that agreement, Appellant pleaded guilty to conspiracy to distribute MDMA and the parties stipulated that he had possessed 36,000 tablets of the drug. Also as part of the plea agreement, Appellant waived his right to appeal his sentence. The Government contends that in light of this waiver, we should dismiss Appellant's appeal. We agree.

■ The right to appeal is a statutory right, not a constitutional right. *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977); 18 U.S.C. § 3742; 28 U.S.C. § 1291. The Supreme Court has repeatedly recognized that a defendant may waive constitutional rights as part of a plea bargaining agreement. *Town of Newton v. Rumery*, 480 U.S. 386, 393, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987). It follows that a defendant may also waive statutory rights, including the right to appeal. We so held in *United States v. Sierra*, No. 91–4342, slip op. at 2 (5th Cir. Dec. 6, 1991) [951 F.2d 345 (Table)] (copy attached), in which the defendant waived the right to appeal her sentence in exchange for a limitation on her maximum term of imprisonment. Several circuits similarly have enforced such waivers. *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992); *United States v. Navarro–Botello*, 912 F.2d 318, 321–22 (9th Cir.

1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Wiggins*, 905 F.2d 51, 52–54 (4th Cir.1990).[2] But, as we recognized in *Sierra*, the waiver must be informed and voluntary. *Sierra*, slip op. at 3; *Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir. 1972); *United States v. Wessells*, 936 F.2d 165, 167 (4th Cir.1991).

Appellant does not assert that his waiver was anything less than voluntary and, after de novo review of the record, we are satisfied that it was informed. As directed by Rule 11 of the Federal Rules of Criminal Procedure, the district court held a hearing at which it reviewed the charges and plea agreement with Appellant and his counsel. The review of the plea agreement included the following colloquy concerning Appellant's waiver of the right to appeal:

> The Court: [You understand] that paragraph six of this and this is very important that you knowingly, that means you know what you are doing, and by reasoning, have exercised the choice to intelligently and voluntarily would waive the right to appeal the sentence imposed in this case on any ground, including the right of appeal conferred by Title 18, United States Code, section 3742, in exchange for the concessions made by the United States of America in this agreement, do you understand that?
>
> Defendant Melancon: Yes, sir.

The district court informed Appellant of the statutory maximum penalty of twenty years, the imposition of supervised release, and the use of the sentencing guidelines. The court also stated that it was not bound by any agreement between the parties regarding sentencing and explained its authority to depart from the guideline sentencing range.

■ Although Appellant's plea agreement differs from the one enforced in *Sierra* in that Appellant was not promised a specific sentence, the uncertainty of Appel-

---

1. Chief Judge of the Eastern District of Texas, sitting by designation.

2. The seventh circuit has also upheld waivers of the right to appeal. The waiver in question was not part of a plea agreement, but was made in a motion to dismiss a previous appeal. *Johnson v. United States*, 838 F.2d 201, 203–04 (7th Cir. 1988).

lant's sentence does not render his waiver uninformed. *See Rutan*, 956 F.2d at 830; *Wiggins*, 905 F.2d at 52. Appellant understood that the court had exclusive authority to set the sentence. He knew that the court would do so in accordance with the sentencing guidelines and that the court had the power to depart from the guideline recommendation. Appellant was also aware of the maximum terms of imprisonment and supervised release applicable to his crime.[3] Most important, he knew that he had a "right to appeal his sentence and that he was giving up that right." *Rutan*, 956 F.2d at 830.

Appellant notes that at his sentencing hearing, the district court advised him that he had the right to appeal his conviction and sentence. He contends that this misstatement negates the knowingness of his waiver and proves that the district court did not believe the waiver was valid. The court's statements, however, were made four months after Appellant entered into the plea agreement with the Government; they could not have influenced Appellant's decision to plead guilty. Furthermore, any alleged uncertainty on behalf of the district court as to the legality of the agreement does not affect our determination that Appellant's waiver was voluntary, knowing, and permissible. *See Rutan*, 956 F.2d at 830.

Finally, Appellant argues that the Government relinquished its right to enforce the agreement because it failed to correct the court's mistake at sentencing. The Government's inaction, though not commendable, did not constitute a breach of the agreement. The Government has timely notified this Court of Appellant's waiver, and thus has preserved its right to enforce the agreement. *But see United States v. Vogt*, 901 F.2d 100, 102 (8th Cir. 1990) (Government could not enforce plea agreement after it delayed in complaining of breach and continued to accept agreement's benefits).

---

**3.** The district court ultimately imposed a sentence within the range described. We do not address, therefore, the question whether Appellant knowingly waived the right to appeal a sentence contrary to the district court's assurances.

We hold that a defendant may, as part of a valid plea agreement, waive his statutory right to appeal his sentence. Appellant voluntarily and knowingly entered such an agreement, waiving his right to appeal. His appeal is, therefore, DISMISSED.

Nothing in this opinion, however, should be interpreted as indicating that a district court is not free to determine whether plea waivers of the right to appeal are unacceptable. We recognize that there may be sound policy reasons for refusing to accept such waivers, and that district courts might disagree with the policy choice made by the court in this case to accept a plea agreement appeal waiver. Today, we simply decide that this district court operated within its discretion in accepting the plea agreement appeal waiver; and we note that a district court's refusal to accept such a waiver likewise would be within its discretion. SO ORDERED.

ATTACHMENT

IN THE UNITED STATES
COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 91–4342

(Summary Calendar)

United States of America,

Plaintiff–Appellee,

versus

Consuleo (sic) Sierra,

Defendant–Appellant.

Appeal from the United States District
Court for the Eastern
District of Texas
(B–90–14–CR, B–91–18–CR)

(December 6, 1991)

Before JONES, DUHÉ and WIENER, Circuit Judges.

## PER CURIAM: *

After being sentenced pursuant to conviction on a plea of guilty for possession with intent to distribute marijuana, Defendant–Appellant, Consuelo Sierra, appeals her sentence despite a provision in her plea agreement waiving her right to appeal in exchange for a limitation on her maximum prison sentence. Finding that her waiver was fully informed and voluntary and that her sentence did not exceed the maximum agreed to in the plea agreement, we dismiss Sierra's appeal.

## I.

Sierra pleaded guilty to a one-count information charging her with possession of marijuana with intent to distribute. As part of the plea agreement the government limited Sierra's exposure to 36 months' imprisonment and Sierra waived her right to appeal her conviction and sentence.

The probation officer preparing Sierra's Presentence Investigation Report (PSR) recommended a base offense level of 26 because he found that the evidence supported the government's position that Sierra negotiated the sale of 375 pounds of marijuana to an undercover agent. The probation officer also recommended denying the two-level decrease for acceptance of responsibility. Sierra filed written objections to the PSR, challenging the amount of marijuana attributed to her and the denial of the reduction for acceptance of responsibility. The probation officer did not make any adjustments to his recommendations.

At sentencing, Sierra again objected to the amount of marijuana attributed to her and to the denial of the two-level reduction for acceptance of responsibility. The district court found that Sierra could have reasonably produced the negotiated amount of marijuana and denied the first objection, but granted the two-level decrease for acceptance of responsibility. Si-

erra's resulting base offense level of 24 and criminal history category of I yielded a guideline range of 51 to 63 months. In accordance with the plea agreement, however, the district court departed from the guideline range to sentence Sierra to 24 months' imprisonment, 5 years' supervised release, and a $50 special assessment. Sierra filed a timely notice of appeal.

## II.

On appeal the government argues that Sierra's appeal should be dismissed because she waived the right to appeal her conviction and sentence as part of her plea agreement. The right to appeal is a statutory right not a constitutional right. *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977); 18 U.S.C. § 3742; 28 U.S.C. § 1291. The Supreme Court has held that a defendant may waive constitutional rights as part of a plea bargaining agreement, *Town of Newton v. Rumery*, 480 U.S. 386, 393, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), so, clearly, a defendant may also waive the statutory right to an appeal. *United States v. Navarro–Bottello*, 912 F.2d 318, 321–22 (9th Cir.1990); *United States v. Wiggins*, 905 F.2d 51, 52–54 (4th Cir.1990). To be valid, the waiver of the right to appeal must be an informed waiver. *Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir.1972).

Sierra's waiver of her right to appeal her conviction and sentence was informed. The record establishes that Sierra was examined and found to be competent to stand trial; that she was represented by counsel and was satisfied with that representation; that she negotiated a plea agreement limiting her exposure to 36 months' imprisonment although the statutory maximum was 5 years' imprisonment; that she was entitled to withdraw her guilty plea if she was sentenced to more than 36 months' imprisonment; that her counsel stated on the record that Sierra understood the terms of the plea agreement; that the district court went through the plea agreement with Sier-

---

* Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

ra, paragraph by paragraph, to ensure that she understood the agreement; and the district court explained to Sierra that as part of the plea agreement she waived her right to appeal her conviction and sentence.

### III.

Sierra's decision to waive her right to appeal was fully informed and voluntary, and the consideration she received for her waiver—limitation of her prison term to 36 months—was honored. Her appeal is DISMISSED.

PARKER, District Judge,* concurring specially:

I concur specially because I cannot dissent. This panel is bound by the unpublished, per curiam opinion, *United States v. Sierra*, No. 91–4342 (5th Cir. Dec. 6, 1991) [951 F.2d 345 (Table)].[1] Unfortunately, the rule articulated in that decision compels me to find that Appellant Melancon's plea agreement waiver of his right to appeal was a knowing, intelligent and voluntary act. I write separately to express why I think the rule embraced by this Circuit in *Sierra* is illogical and mischievous—and to urge the full Court to examine the *"Sierra* rule," and to reject it.[2]

In *Sierra*, this Circuit adopted the rule previously promulgated in other circuits—

that guilty plea provisions calling upon the defendant to waive his or her right to appeal are valid as long as this waiver is "informed and voluntary." The following syllogism, as reiterated in today's opinion, underlies this rule: "The right to appeal is a statutory right, not a constitutional right.[ ] The Supreme Court has repeatedly recognized that a defendant may waive constitutional rights as part of a plea bargaining agreement.[ ] It follows that a defendant may also waive statutory rights, including the right to appeal." (citations omitted) (emphasis added)

In addition to *Sierra*, today's majority opinion relies on the decisions in three other circuits to support the conclusion that the waiver at issue in this case is acceptable. But only the Eighth Circuit opinion in *United States v. Rutan*, 956 F.2d 827 (8th Cir.1992), has emerged since *Sierra* was decided. The cursory *Rutan* decision adds nothing substantial to the analysis of the issue we confront; *Rutan*, like *Sierra*, merely follows the inadequately reasoned decisions from the Fourth and Ninth Circuits to which the Court today again looks for support. So, today's majority opinion simply recasts *Sierra*, adding, in my view, only one more ill-judged decision by another circuit to the faulty syllogism embraced in *Sierra*.

Because the *Sierra* opinion is unpublished and unavailable, Appellant Melancon may have been completely unaware that this Court had embraced the rule articulated therein. (While the government managed to cite *Sierra* in its brief, the opinion cannot be found in the Federal Reporter and cannot be obtained through the two public computerized legal networks.) Yet *Sierra* does not simply reaffirm the law of the Circuit. The Fifth Circuit case *Sierra* cites for the proposition that "[t]o be valid, the waiver of the right to appeal must be an informed waiver"—*Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir.1972)—did not settle the question posed by *Sierra*. *Arrastia* addresses a defendant's waiver of the right to appeal his *post-trial conviction*—a fundamentally different circumstance from the one presented in *Sierra*, which concerns the propriety of a *plea agreement* waiver of the right to appeal, including the right to appeal a supposedly Guidelines-limited sentence *yet to be imposed.*

---

* Chief Judge, Eastern District of Texas, sitting by designation.

1. *See Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir.1981); *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991) (respecting Fifth Circuit Local Rule 47.5.3).

2. Aside from the question of *Sierra*'s wisdom, or lack thereof, I note too the problems inherent in giving precedential effect to unpublished opinions. *See* 5th Cir.R. 47.5.3. Since, by definition, a decision is unpublished only if it "has no precedential value" (5th Cir.R. 47.5.1), making such a decision binding runs the risk of having it unintentionally make new law. *Sierra* does not, in fact, merely reiterate settled principles of law, but rather presumes to settle—through stare decisis—the unsettled. This (attempted) appeal "is a prime example of the complications caused by this Court's adherence to the rule that unpublished opinions are binding precedent." *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 467 n. 2 (5th Cir.1991) (Johnson, J. concurring in part and dissenting in part) (citing 5th Cir.R. 47.5.3).

Today's opinion, like *Sierra* before it, is a prime illustration of the risk run by following the reasoning of other circuits on important and unsettled issues without undertaking a thorough, independent analysis of whether the logic of the other circuits is flawed. Just because other circuits have said a ruling is cut from the cloth of reason does not always mean that it is. This Circuit should speak up when the "emperors" of other circuits are wearing no clothes.[3] The rule articulated in *Sierra* is clearly unacceptable, even unconstitutional policy: the *"Sierra* rule" manipulates the concept of knowing, intelligent and voluntary waiver so as to insulate from appellate review the decision-making by lower courts in an important area of the criminal law. And it seeks to accomplish this abnormal gain in "speed" and "finality" by thwarting congressional limitations on the courts' sentencing power and cramping the constitutional rights of those who succumb to plea agreement waivers of the right to appeal.

It matters not that this is a drug case. It matters not that this (attempted) appeal may well be without merit on its substantive points. It matters that we take care to see that the so called "war on drugs" not count among its casualties constitutional integrity.

### I. *Sierra's* Futuristic "Knowing and Intelligent" Waiver

As an initial matter, I do not think that a defendant can ever knowingly and intelligently waive, as part of a plea agreement, the right to appeal a sentence that has yet to be imposed at the time he or she enters into the plea agreement; such a "waiver" is inherently uninformed and unintelligent.

The *Sierra* Court followed the Fourth and Ninth Circuits in holding that a waiver of the right to appeal one's sentence is "knowing" and "informed" as long as the accused realizes that the effect of this waiver is that he or she will not be able to appeal. Accordingly, today's majority opinion states (quoting *United States v. Rutan*, 956 F.2d 827, 830 (8th Cir.1992)): "[Appellant Melancon] knew that he had a 'right to appeal his sentence and that he was giving up that right.'" But this roundabout conclusion—first articulated by the Fourth Circuit in *United States v. Wiggins*, and followed so far by the courts subsequently confronting the issue—misapprehends the nature of the requirement that waivers of important rights be knowing and intelligent.[4]

In the typical waiver cases, the act of waiving the right occurs at the moment the waiver is executed. For example: one waives the right to silence, and then speaks; one waives the right to have a jury determine one's guilt, and then admits his or her guilt to the judge. In these cases, the defendant knows what he or she is about to say, or knows the nature of the crime to which he or she pleads guilty. *See Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983) (in order for plea agreement to be valid, accused must have notice of the nature of the charge); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (defining waiver as "an intentional relinquishment or abandonment of a *known right or privilege."*) (emphasis added). *Cf. McKinney v. United States*, 403 F.2d 57, 59 (5th Cir.1968) ("the right to appeal should not be considered as having

---

**3.** " ... arguments, like men, are often pretenders." Plato, *quoted in* Irving M. Copi & Carl Cohen, Introduction to Logic 91 (8th ed. 1990).

**4.** The fallacious syllogism embraced in *Sierra*—and readopted in today's opinion—was created in the Fourth Circuit's ill-conceived case, *United States v. Wiggins*, 905 F.2d 51, 52–54 (4th Cir. 1990), *cited in United States v. Sierra*, No. 91–4342, at p. 3 (5th Cir. Dec. 6, 1991) [951 F.2d 345 (Table) ]. The Ninth Circuit case upon which *Sierra* rests, *United States v. Navarro–Botello*, 912 F.2d 318 (9th Cir.1990), essentially follows without question the illogic of *Wiggins*. In their

1991 (majority) opinions on the subject of plea agreement waivers of appellate rights, the Fourth and Ninth Circuits simply follow themselves—*i.e.*, adding but another layer of specious reasoning to this subject. *See United States v. Wessells*, 936 F.2d 165, 167–168 (4th Cir.1991); *United States v. Bolinger*, 940 F.2d 478, 479–480 (9th Cir.1991). The Eighth Circuit's recent case—*United States v. Rutan*, 956 F.2d 827 (8th Cir.1992)—in following the misbegotten syllogism of *Wiggins*, commits the same errors as *Sierra;* yet today this Court cites *Rutan* as *justification* for repeating *Sierra's* mistakes.

been waived or abandoned except where it is *clearly* established that such is the case.") (emphasis added). While one cannot fully know the consequences of confessing or pleading guilty, one does know what is being yielded up *at the time he or she yields it.*

Like the Court in *Sierra,* today my colleagues cite a *typical* waiver case—*Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987)—for the categorical proposition that one may waive a constitutional right as part of a plea bargaining agreement. *Cf. United States v. Sierra,* No. 91–4342, at p. 3 (5th Cir. Dec. 6, 1991) [951 F.2d 345 (Table)]. But in *Newton,* the right waived was the right to sue under 42 U.S.C. § 1983. Thus, the waiver in *Newton,* too, was of a known quantity: a lawsuit—of which the one waiving had full knowledge, and over which the one waiving exercised control. Similarly, the seminal case for the fallacious syllogism embraced by *Sierra*—*United States v. Wiggins,* 905 F.2d 51, 52–54 (4th Cir.1990)—cites, for the proposition that statutory rights are waivable, the Fourth Circuit's earlier decisions in: *United States v. Clark,* 865 F.2d 1433, 1437 (4th Cir.1989) (en banc); and *United States v. Sheffer,* 896 F.2d 842, 847 (4th Cir.1990). But again, in both of these earlier Fourth Circuit cases, known quantities were waived. In *Clark,* the defendants waived their statutory rights to an immediate detention hearing (because they desired to remain in custody for their own protection). In *Sheffer,* what the defendant waived by persisting in his guilty plea, despite disagreement over the import of a paragraph in his plea agreement (a paragraph concerning what sort of recommendation the United States Attorney's Office would make respecting the judge's Guidelines sentencing of the defendant), was the right to appeal the already known (*i.e.,* pre-waiver) issue of the proper interpretation of that paragraph.[5]

The situation is completely different when one waives the right to appeal a Guidelines-circumscribed sentence before the sentence has been imposed. What is really being waived is not some abstract right to appeal, but the right to correct an erroneous application of the Guidelines or an otherwise illegal sentence.[6] *This right cannot come into existence until after the judge pronounces sentence;* it is only then that the defendant knows what errors the district court has made—*i.e.,* what errors exist to be appealed, or waived. *See* Fed. R.Crim.P. 11, 1989 Amendment advisory committee's note (respecting the amendment's mandate that the district court inform the defendant that the court is required to consider any applicable guidelines but may depart from them under some circumstances, so as to assure that the existence of the Guidelines will be known to the defendant before a plea of guilty or nolo contendere is accepted: "Since it will be impracticable, if not impossible, to know which guidelines will be relevant prior to the formulation of a presentence report and resolution of disputed facts, the amendment does not require the court to specify which guidelines will be important or which grounds for departure might prove to be significant.").

In categorically citing cases concerning the waiver of the right to appeal known quantities, to support the proposition that

---

5. And the Seventh Circuit *habeas corpus* case cited by the majority—*Johnson v. United States,* 838 F.2d 201 (7th Cir.1988)—is no different. The issue in that case was whether the defendant-appellant could satisfy the applicable *habeas corpus* standard of "cause and prejudice" for waiving, *post-conviction* and *after imposition of sentence*—his known grounds for appealing the same. Defendant–Appellant Johnson *knew* what grounds he had for appealing his conviction and sentence, and he simply acted according to these known quantities to strategically waive his right to appeal:

his lawyer told him that an appeal would be expensive, that he would be out of prison by the time the court got "round" to deciding the appeal, and that after dropping his appeal he could file a motion for a reduction of sentence under Fed.R.Crim.P. 35 with a greater prospect of success. The defendant cannot press his claims in two courts *at once* but must choose.[ ]

*Johnson, id.* at 204 (citations omitted) (emphasis added).

6. *See* 18 U.S.C. § 3742(a)(1) & (2); 18 U.S.C. § 3742(e).

the waiver of the right to appeal unknown errors may be likewise "informed," today's opinion simply perpetuates a fallacy embraced in *Sierra*—a strain of the *fallacy of Accident*.[7] It is, then, a shaky foundation indeed that props up *Sierra,* and one unworthy of providing the underpinning for such a significant rule of this Circuit.[8] Yet even if I were convinced that the sort of futuristic waiver at issue in this case could be knowing and intelligent, I could not support it. Any systemic benefits that might inhere in this type waiver cannot overcome its extremely deleterious effects upon judicial and congressional integrity, and individual constitutional rights.

## II. The *Sierra* Rule Moves Sentencing Out of (Over)Sight

The *"Sierra* rule" reiterated today has roots in still another *fallacy of Accident*—one embraced without question by a majority of the Fourth Circuit in *United States v. Clark,* 865 F.2d 1433, 1437 (4th Cir.1989) (en banc), and readopted without hesitation in the Fourth Circuit case underlying *Sierra: Wiggins.* In *Clark,* a majority of the en banc Fourth Circuit made the following mistake: "[i]f defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial, *surely* they are not precluded from waiving procedural rights granted by statute." *Clark,* 865 F.2d at 1437 (emphasis added), *quoted in United States v. Wiggins,* 905 F.2d 51, 53 (4th Cir.1990). *See also e.g., United States v. Rutan,* 956 F.2d 827, 829 (8th Cir.1992) ("If defendants can waive fundamental rights, surely they are not precluded from waiving procedural rights granted by statute."). However, even assuming *arguendo* that the right to appeal one's sentence is not a fundamental, but a "mere" statutory right, it does *not* necessarily follow that the statutory right to appeal is waivable because "lesser" than waivable constitutional rights. Individual rights are not all that are at issue here.

28 U.S.C. § 1291 and the provisions of 18 U.S.C. § 3742 cannot be understood as mere conferrals of individual rights to appeal a sentence under the Sentencing Guidelines. Rather, these statutory provisions, along with the Sentencing Guidelines themselves, speak directly to the power of the federal courts and should be read as imposing limitations upon individual and judicial authority. Such limitations cannot be "waived" by parties. *Compare United States v. Willis,* 958 F.2d 60, 62–63 (5th Cir.1992) (reaffirming that the Speedy Trial Act's "central intent is to protect society's interests" and thus, that the provisions of the Act are not waivable by the defendant) (citing *United States v. Kington,* 875 F.2d 1091, 1107 (5th Cir.1989)), *with Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (respecting the waivability of the defendant's Sixth Amendment speedy trial guarantee).

It is a curious rule that says one cannot waive a statutory right to a speedy trial, on the one hand, and at the same time says that one can waive a statutory and fundamentally important right to an appeal, on the other. True, an unconditional guilty plea—made knowingly, voluntarily, and with the benefit of competent counsel—functionally waives all nonjurisdictional defects that have occurred during pre-plea proceedings against the defendant. *United States v. Jackson,* 659 F.2d 73 (5th Cir.1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1637, 71 L.Ed.2d 870 (1982). *See also United States v. Caperell,* 938 F.2d 975, 977 (9th Cir.1991) (guilty plea generally waives all claims of a constitutional nature occurring before the plea). And it is true that among the nonjurisdictional defects so waived are Speedy Trial Act violations. *United States v. Broussard,* 645 F.2d 504, 505 (5th Cir.1981) ("The entry of a knowing

---

**7.** *See generally* Irving M. Copi & Carl Cohen, Introduction to Logic 100–101 (8th ed. 1990) ("when we apply a generalization to individual cases that it does not properly govern, we commit the *fallacy of Accident*.").

**8.** *See id.* at 101 (regarding the *fallacy of Accident:* "there is no fallacy more insidious than that of treating a statement which in many connections is not misleading as if it were true always and without qualification.") (quoting H.W.B. Joseph, An Introduction to Logic (New York: Oxford University Press, 1906)).

and voluntary guilty plea waives all nonjurisdictional defects in the proceeding.[ ] This disposes of the speedy trial claim.[ ]") (citations omitted); *accord United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992) ("A defendant's guilty plea waives all nonjurisdictional defect claims.[ ] The right to a speedy trial under the Speedy Trial Act is nonjurisdictional.") (citation omitted). But the plea agreement waiver of the right to appeal a *forthcoming* Guidelines sentence is different in kind from a plea agreement-triggered waiver of nonjurisdictional defects occurring *pre-plea. See Blackledge v. Perry*, 417 U.S. 21, 37, 94 S.Ct. 2098, 2107, 40 L.Ed.2d 628 (1974) (Rehnquist, J., dissenting) ("Imposition of sentence in violation of [due process] is not an 'antecedent constitutional violation' *since sentence is customarily imposed after a plea of guilty,* and is a separate legal event from the determination by the [c]ourt that the defendant is in fact guilty of the offense with which he is charged.") (emphasis added).

It is especially important to realize that the systemic value protected by the non-waivability of Speedy Trial Act provisions (absent a guilty plea) is *identical* to that secured by plea bargains—*i.e.,* "speedy justice." *Compare United States v. Willis*, 958 F.2d 60, 63 (5th Cir.1992) ("Allowing the defendant to waive the Act's provisions would compromise the public interest in speedy justice."), *with Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627–1628, 52 L.Ed.2d 136 (1977) (noting the importance of plea bargaining in this country's criminal justice system; plea bargaining's chief virtues being "speed, economy and finality"). In contrast, the public interest in proper applications of the Guidelines cannot be protected through a defendant's plea bargained "waiver" of review of the district court's Guidelines sentencing; the

defendant's "waiver" of review of district court sentencing under the Guidelines *offends* the systemic goals reflected in the Sentencing Guidelines. Indeed, the majority's assertion that "the [district] court had exclusive authority to set the sentence" notwithstanding, the *Sierra* rule is mutinous—in terms of the fundamental constitutional doctrines of separation of powers and checks and balances; the rule sanctions district court usurpation of the discretionary sentencing authority Congress expressly took away from the federal trial courts in 1984. *See generally Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *cf. id.* at 382, 109 S.Ct. at 659 ("the greatest security against tyranny—the accumulation of excessive authority in a single branch—lies ... in a carefully crafted system of checked and balanced power within each Branch.").[9]

Despite the majority's assertion that "[Appellant Melancon] knew that the court would [set his sentence] in accordance with the sentencing guidelines....", Appellant Melancon had no such assurance—as the large and expanding universe of law concerning district court applications of the Sentencing Guidelines and appellate court review of the same makes clear.[10] In fact, 18 U.S.C. § 3742 plays an essential part in accomplishing the intent of Congress to limit federal court sentencing power; and the *Sierra* rule thwarts § 3742. Following are reflections of the judicial encroachment sponsored by *Sierra*.

A sentencing court may depart upward or downward from the applicable guidelines, to impose a sentence outside the "guideline range," if the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. 18 U.S.C. § 3553(b). But this Circuit has been

9. I note also that the majority's cited case, *Johnson v. United States*, 838 F.2d 201 (7th Cir.1988), is not a Guidelines case. Defendant–Appellant Johnson was sentenced in March 1983 while the Guidelines emerged as part of the Sentencing Reform Act of 1984.

10. Legal principles relative to district court application of the Guidelines and appellate court

review of the same are in fact so unsettled (yet important) that a special reporter has been created to track and explain developments in this area. *See generally* Federal Sentencing Reporter (published for the Vera Institute of Justice by the University of California Press) (edited by Emory and Yale Law School Professors Marc Miller and Daniel J. Freed).

quite inflexible in its demands: (1) that the sentencing court state its reasons for any such departure, and (2) that the sentence imposed pursuant to such a departure be *reasonable* in light of the sentencing court's articulated reasons. *See generally United States v. Mourning*, 914 F.2d 699, 707–708 (5th Cir.1990). The *Sierra* rule obstructs this Circuit's orders respecting Sentencing Guidelines departures, by insulating violations of these orders from review. Also insulated from appellate review under the *Sierra* rule is the district court judge's adoption of the "guideline range" calculated under the Sentencing Guidelines by nonjudicial probation officers. Moreover, waivers of the sort at issue in this case insulate from review *factual inadequacies* in the presentence reports generated by nonjudicial probation officers in Sentencing Guidelines cases. Appellate review ensures that the record adequately support whatever factual findings the district court judge makes or adopts. *See United States v. Melton*, 930 F.2d 1096 (5th Cir.1991) (vacating sentencing determination because district court did not articulate basis for factual findings); *United States v. Graves*, 720 F.2d 821, 824 (5th Cir.1983) ("when a presentence report is relied upon as a source of the factual basis to establish the crime, this circumstance must appear on the record, and where necessary to establish the factual basis, the presentence report must be part of the record on appeal."). The *Sierra* rule cancels this insurance.

In brief: every erroneous application of the Guidelines frustrates the complex policy goals that Congress and the United States Sentencing Commission intended for the Guidelines to further.[11] The *Sierra* rule works a breach of the Judiciary's duty to ensure that the goals of Congress and the Sentencing Commission are met. *Cf. Mistretta v. United States*, 488 U.S. 361, 390, 109 S.Ct. 647, 664, 102 L.Ed.2d 714 (1989) ("the sentencing function long has been a peculiarly shared responsibility among the Branches of government and has never been thought of as the exclusive constitutional province of any one Branch.") (citing *United States v. Addonizio*, 442 U.S. 178, 188–189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979)). And the fact that—as my colleagues emphasize—"the district court ultimately imposed a sentence within the [applicable guideline] range" affords no systemic shelter from *Sierra's* certain storm of judicial encroachment.[12]

### III. The *Sierra* Rule Neuters Federal Rule of Criminal Procedure 11

While today's majority opinion addresses to some extent the district court's performance pursuant to Federal Rule of Criminal Procedure 11 (Rule 11), such an analysis is not commanded by the majority opinion. And the *Sierra* rule actually appears to sanction district court disavowal of Rule 11.

District court satisfaction of the "core concerns" of Rule 11 is supposed to help guarantee that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). *Cf. United States*

---

**11.** While the United States Sentencing Commission is "housed" in the Judicial Branch, it is a body independent of that Branch. *See generally Mistretta v. United States*, 488 U.S. 361, 368–369, 109 S.Ct. 647, 652–653, 102 L.Ed.2d 714 (1989) (citing 28 U.S.C. §§ 991–995); *id.* at 384–385, 109 S.Ct. at 661 ("The Sentencing Commission unquestionably is a peculiar institution within the framework of our Government. Although placed by the [the Sentencing Reform Act of 1984] in the Judicial Branch, it is not a court and does not exercise judicial power.").

**12.** Moreover, the majority's failure to address the precise contours of acceptability relative to

a "*Sierra* Waiver" (*i.e.*, "We do not address … the question whether Appellant knowingly waived the right to appeal a sentence contrary to the district court's assurances") is inconsistent with principles of judicial economy—in light of the fact that Appellant Melancon's plea agreement says *unequivocally* that he waived his "right to appeal the sentence imposed in [ ]his case *on any ground*, including any appeal right conferred by Title 18, United States Code, Section 3742." Plea Agreement of March 13, 1991 in *United States v. Brian Melancon*, E.D.Tex. No. 1:90–CR–65(4), at paragraph 6 (emphasis added).

*v. Dayton,* 604 F.2d 931 (5th Cir.1979) (Fifth Circuit, en banc, holding that a failure of a district court to address Rule 11's core concerns requires automatic reversal. Rule 11's core concerns are: whether the plea was coerced; whether the accused understands the nature of the charges against him or her; and whether the accused understands the consequences of his or her plea), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).[13] Adherence to Rule 11's core concerns is crucial, given the final consequences of pleading guilty. In pleading guilty the defendant may be foregoing a number of procedural and substantive rights, which rights might lead to acquittal or dismissal if the defendant's case proceeded toward trial.[14]

Appellant Melancon's plea agreement says that he waived his "right to appeal the *sentence* imposed in [ ]his case *on any ground,* including any appeal right conferred by Title 18, United States Code, Section 3742."[15] And the circuit opinions upon which *Sierra* relies address only the plea agreement waiver of the right to appeal a forthcoming sentence. But *Sierra* itself states that a defendant may waive the right to appeal his or her *conviction and sentence,* as long as the waiver was "informed." *See United States v. Sierra,* No. 91–4342, at p. 3 (5th Cir. Dec. 6, 1991) [951 F.2d 345 (Table) ] ("[T]he government argues that Sierra's appeal should be dismissed because she waived the right to appeal her *conviction and sentence* as part of her plea agreement." "Sierra's waiver of her right to appeal her *conviction and sentence* was informed.") (emphasis add-

ed). Thus, *Sierra* appears to go so far as to insulate from direct review the district court judge's performance relative to Federal Rule of Criminal Procedure 11—*i.e.,* by crushing the tripartite "core concern" scrutiny called for by Rule 11 and its interpretive caselaw into a quick colloquy about one concern: Is the defendant's *waiver* of his or her right to appeal a sentence "knowing, intelligent and voluntary?" *See United States v. Rutan,* 956 F.2d 827, 828–829 (8th Cir.1992) ("The district court accepted the plea after an extensive colloquy regarding the implications of *the waiver.*") (emphasis added). *See also United States v. Wessells,* 936 F.2d 165 (4th Cir.1991); *United States v. Bolinger,* 940 F.2d 478 (9th Cir.1991) (*i.e.,* neither of these later opinions from the Fourth and Ninth Circuits on the subject of plea agreement waivers of the right to appeal one's yet-to-be-announced sentence address the district court's satisfaction of Rule 11's core concerns). *Cf. United States v. Dayton,* 604 F.2d 931 (5th Cir.1979) (Fifth Circuit, en banc, holding that a failure of a district court to address Rule 11's core concerns requires automatic reversal), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). *Compare also Barrientos v. United States,* 668 F.2d 838, 842–843 (5th Cir. 1982) ("We note that following a plea of guilty, a defendant may in some circumstances question the propriety of a Rule 11 proceeding. *Other complaints,* however, *not based on a* jurisdictional or *Rule 11 ground* should be considered in a motion to vacate under Section 2255.") (emphasis added).

---

**13.** Non-compliance with the *non-core* requirements of Rule 11, or merely inadequate or "less than letter perfect" treatment of a core concern, *may* be excused under a harmless error analysis. *United States v. Bachynsky,* 934 F.2d 1349, 1358 (5th Cir.) (en banc) (following in this respect *United States v. Corbett*—742 F.2d 173, 178 n. 14 (5th Cir.1984)—but hastening to add that a determination by the Circuit that a failure to address an element or component of Rule 11 is "partial" does nothing more than leave open the door to test that error for harmlessness; "[a] determination that such a failure is *partial* does not automatically make it *harmless.*"), *cert. denied,* —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991). *Accord United States v. Adams,* 961 F.2d 505, 510–511 (5th Cir.1992); *United States*

*v. Martirosian,* 967 F.2d 1036, 1038–1039 (5th Cir.1992).

**14.** *See generally McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969); *Boykin v. Alabama,* 395 U.S. 238, 242–244, 89 S.Ct. 1709, 1711–1713, 23 L.Ed.2d 274 (1969). *See also Barrientos v. United States,* 668 F.2d 838, 842–843 (5th Cir.1982); *United States v. Caperell,* 938 F.2d 975, 977 (9th Cir. 1991).

**15.** Plea Agreement of March 13, 1991 in *United States v. Brian Melancon,* E.D.Tex.Crim. No. 1:90–CR–65(4), at paragraph 6 (emphasis added).

## IV. The Waiver of the Right to Appeal Anything About One's Sentence Places an Unconstitutional Condition Upon Pleading

Aside from the facts that the *Sierra* rule (1) misapprehends the present-time nature of a knowing and intelligent waiver, (2) offends judicial integrity by foreclosing from this Court the ability to directly review errors surrounding a defendant's "conviction and sentence," and (3) contravenes the congressional intent underlying the Sentencing Guidelines (*i.e.*, to limit the power of the federal district courts with respect to sentencing), this rule reflects the imposition of an unconstitutional condition upon a defendant's decision to plead guilty. Unconstitutional conditions occur

> when the government offers a benefit on condition that the recipient perform or forego an activity that a preferred constitutional right normally protects from governmental interference. The "exchange" thus has two components: the conditioned government *benefit* on the one hand and the affected constitutional *right* on the other.[16]

It is true that in pleading guilty to a charge knowingly, voluntarily, and with the benefit of competent counsel, one waives all but a few grounds on which to appeal. This is because a guilty plea admits all the elements of a formal criminal charge and works to waive nonjurisdictional defects occurring prior to the guilty plea's execution. *See Barrientos v. United States*, 668 F.2d 838, 842–843 (5th Cir.1982) (citing *United States v. Jackson*, 659 F.2d 73 (5th Cir. 1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1637, 71 L.Ed.2d 870 (1982); and *United States v. Saldana*, 505 F.2d 628 (5th Cir. 1974)). Nonetheless, at bottom, the right to appeal in criminal cases is of fundamental importance.[17] Even if the Due Process and Equal Protection Clauses of the Constitution do not require the government to create a statutory system of appellate rights, these constitutional clauses do require the government, once it has decided voluntarily to create such a system (as it has), to allow unfettered and equal access to it.[18] Moreover, the mandatory guideline sentencing system created by the Sentencing Reform Act of 1984 creates such expectations that a defendant enjoys a constitutionally-protected liberty interest in being sentenced according to the Guidelines. *See generally Burns v. United States*, —— U.S. ——, ——, 111 S.Ct. 2182, 2186–2188, 115 L.Ed.2d 123 (1991); *id.* at ——, ——, 111 S.Ct. at 2190–2192, 2196–2197 (Souter, J., dissenting) ((1) noting that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause" (quoting *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977)); and (2) concluding that the Sentencing Reform Act, like the mandatory parole statutes, created a liberty interest by using mandatory language— *i.e.*, that a sentencing judge "shall impose a sentence of the kind, and within the range [set forth in the Guidelines,] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or

---

**16.** Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv.L.R. 1415, 1421–1422 (1989) (emphasis in original). *See also id.* at 1419:

> [The doctrine of unconstitutional conditions] cannot define the content of constitutional liberties, rank their importance, or set the level of state justification demanded for their infringement. But assuming that some set of constitutionally preferred liberties has been agreed upon, and that burdens on those liberties require especially strong justification, unconstitutional conditions doctrine performs an important function.

Accordingly, commentators have overwhelmingly supported the doctrine's basic premises. *Id.* at 1415 (citing the works of several imminent scholars for this proposition).

**17.** *See generally Griffin v. Illinois*, 351 U.S. 12, 18–19, 76 S.Ct. 585, 590–591, 100 L.Ed. 891 (1956) (recognizing the fundamental fairness role that the appellate review process plays in the criminal justice system); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). *Cf. Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). *See also Arrastia v. United States*, 455 U.S. 736, 739 (5th Cir.1972) ("[The right to a direct appeal] is a right which is fundamental to the concept of due process of law.") (citations omitted).

**18.** *See generally Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (holding that government has a due process duty not to limit the opportunity of a statutorily created direct appeal in a criminal case).

to a degree, not adequately taken into consideration by the Sentencing Commission" (quoting 18 U.S.C. § 3553(b); and citing *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979), and its progeny, which recognized that mandatory parole statutes—by giving convicts an "expectation of release"—create a liberty interest subject to "some measure of constitutional protection.")). *See also United States v. Restrepo,* 946 F.2d 654 (9th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992).

With a *"Sierra* Waiver," the government grants to the criminal defendant the *benefit* of a plea agreement only on the *condition* that the defendant accept the bootstrapped abdication of his or her right to appeal. This is at least unacceptable, even if the government may withhold the benefit (*i.e.,* the plea agreement) altogether. *See United States v. Rodriguez,* 959 F.2d 193, 197–198 (11th Cir.1992) (district court improperly conditioned sentence under the Guidelines when it weighed defendants' exercise of their Fifth Amendment rights and their intention to exercise their right to appeal against them in denying their request for two-level reduction in offense level for acceptance of responsibility). *See also Blackledge v. Perry,* 417 U.S. 21, 25–28, 94 S.Ct. 2098, 2101–2102, 40 L.Ed.2d 628 (1974) (condemning, as violative of due process, vindictive prosecutorial (recharging) mechanisms discouraging appeals: "by 'upping the ante' through a felony indictment whenever [one] pursues his statutory appellate remedy—the [government] can insure that only the most hardy defendants will brave the hazards of a de novo trial.") (quoting *North Carolina v. Pearce,* 395 U.S. 711, 724–725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969): "imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or

collateral remedy would be ... a violation of due process of law.").

As this Circuit recognized recently:

Prosecutorial vindictiveness exists "if the prosecution acts arguably to punish the exercise of [the right to appeal], by increasing the measure of jeopardy by bringing additional or more severe charges, or where the judge assesses a larger penalty upon subsequent conviction for the same offense following an earlier reversal." [19]

Given that waivers of the *Sierra* sort are systemically flawed (not to mention that they are inherently uninformed and unintelligent), they do indeed "pose a realistic likelihood of 'vindictiveness.' " [20]   In light of the *"Sierra* Waiver's" systemic disutility, it is *quite* arguable that in conditioning a plea bargain upon the defendant making this type waiver, the prosecution acts only to punish the defendant's exercise of his or her right to appeal—*i.e.,* by threatening to increase the measure of jeopardy faced by a defendant who refuses to execute a *Sierra* Waiver. Such prosecutorial overreaching impedes the defendant's due process rights and impinges the voluntariness of the defendant's guilty plea.[21]

*Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), is not *contra.* The purposefully narrow holding in *Bordenkircher* was this: the course of conduct engaged in by the prosecutor in that case—which no more than openly presented the defendant with the unpleasant alternatives of foregoing *trial* or facing charges on which he was plainly subject to prosecution—did not violate the Due Process Clause of the Fourteenth Amendment. The *Bordenkircher* Court emphasized that, by tolerating and encouraging the negotiation of pleas, the Court had accepted as constitutionally legitimate the simple reality that the prosecutor's interest

---

**19.**   *United States v. Chagra,* 957 F.2d 192, 195 (5th Cir.1992) (quoting *United States v. Ward,* 757 F.2d 616, 619–620 (5th Cir.1985)).

**20.**   *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974), *quoted in Chagra, id.* at 195.

**21.**   *See e.g., Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (the inquiry into voluntariness calls for an appreciation of the character of the government's conduct, not simply an examination of the suspect's state of mind), *cited in Johnson v. United States,* 838 F.2d 201, 204 (7th Cir.1988).

at the bargaining table is to persuade the defendant to forego *his constitutional right to stand trial.* 434 U.S. at 365, 98 S.Ct. at 669. Had the *Bordenkircher* Court rejected the prosecutor's ability during plea negotiations to threaten enlargement of the defendant's jeopardy, "the institution of plea negotiation could not survive." *United States v. Goodwin,* 457 U.S. 368, 378 n. 10, 102 S.Ct. 2485, 2491, n. 10, 73 L.Ed.2d 74 (1982) (explaining *Bordenkircher* ). In stark contrast to the situation presented in *Bordenkircher,* waivers of the *Sierra* sort appear devoid of systemic or societal value. Certainly, the (due process violation) risks run by the *Sierra* Waiver are not *necessary* to the survival of the generally beneficial institution of plea negotiation.

In short: the Supreme Court has found certain actions to be so likely to result from prosecutorial misconduct that the Court has "presume[d]" them to be motivated by improper vindictive impulses. *United States v. Goodwin,* 457 U.S. 368, 373, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). *See also Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In light of the *Sierra* Waiver's systemic demerits, it is presumptively constitutionally improper for a prosecutor to add to his or her interests at the bargaining table the conditioning of plea agreements upon the defendant's abdicating the right to appeal (on any grounds) a forthcoming sentence. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) ("[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' ") (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 32–33, n. 20, 93 S.Ct. 1977, 1986, n. 20, 36 L.Ed.2d 714 (1973)).

## V. What "Good" are These Waivers?

Even if I did not consider the sort of futuristic waiver at issue in this case to be inherently uninformed, unintelligent and involuntary, I would think it unacceptable because any benefits it might confer are too minuscule to overcome its deleterious consequences.

Most fundamentally: there is no reason to believe the waiver of appellate rights is an indispensable part of plea bargaining. Plenty of plea agreements were made prior to the reign of these appellate right waiver clauses.

Second: if the *Sierra* rule represents the collective opinion of the members of this Court that these waivers will stem the tide of appeals in this type case, the Court is engaging in wishful thinking at best and self-delusion at least. Such appeals will simply come equipped with additional arguments about whether one's right to appeal has been waived "intelligently, knowingly and voluntarily." And because the *Sierra* rule serves to force Rule 11 complaints into habeas corpus pleadings—*see United States v. Rutan,* 956 F.2d 827, 829 (8th Cir.1992)—this Court can surely expect to see an increase in habeas corpus cases. Thus, far from *decreasing* the Court's workload in this area of the criminal law, the *Sierra* rule appears certain to *increase* it.

Yet, assuming that Efficiency *can* be heard to advocate our adherence to the *Sierra* rule, her argument is, at best, weak. Any small "gain" in "speed," "economy", or "finality" derived from *Sierra* 's continued sovereignty is overwhelmed by the rule's exorbitant, unacceptable cost to judicial and congressional integrity, and individual constitutional rights. *Cf. Newton v. Rumery,* 480 U.S. 386, 394–398, 399–403, 107 S.Ct. 1187, 1193–1195, 1195–1197, 94 L.Ed.2d 405 (1987) (plurality and concurring opinions) (holding that the waiver of one's § 1983 claims against local governments and officials (*i.e.,* the execution of a "release-dismissal agreement"), as part of a plea bargaining agreement, is not *per se* void as against public policy—but rather, that such is enforceable *when:* (1) the agreement was voluntarily made, (2) there is *no evidence* of prosecutorial misconduct or overreaching, *and* (3) *enforcement of the agreement will not adversely affect the relevant public interests* ); *id.* 480 U.S. at 401, 107 S.Ct. at 1196 (O'Connor, J., concurring specially with four-justice plurality opinion (four other justices dissent-

ing)—in order to accentuate her view that *the burden is upon those seeking to enforce release-dismissal agreements* to prove: (1) that a particular agreement was voluntarily made, (2) that the agreement was not the product of prosecutorial overreaching, and (3) that the agreement is in the public interest).

## VI. Conclusion

For the reasons I have addressed, I concur merely in the panel's judgment, and only because stare decisis says I must. I strongly urge the Circuit, en banc, to examine the *Sierra* rule—and to disclaim it. The *Sierra* rule is a legal woods colt whose questionable ancestry will surely result in offspring of which this Circuit will not be proud.