**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-8285

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

NICHOLAS ARTHUR PORTILLO,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

(       March 23, 1994      )

Before JONES and DeMOSS, Circuit Judges, and SCHWARTZ[1], District
Judge.

DeMOSS, Circuit Judge:

Appellant Portillo was indicted for (1) armed robbery of an
automobile, in violation of 18 U.S.C. § 2119; and (2) use of a
firearm during a crime of violence; in violation of 18 U.S.C. §
924(c).  Portillo filed a motion to dismiss the indictment or,
alternatively, to compel the government to elect between the two
counts, arguing that sentencing him for both charges would violate
the Double Jeopardy Clause.  The district court denied Portillo's

_____

[1] District Judge of the Eastern District of Louisiana, sitting
by designation.

motion, concluding that Congress intended to cumulatively punish offenders of both statutes.

Portillo unconditionally pleaded guilty to carjacking. However, his guilty plea to the gun charge was conditional:

2. The Defendant agrees to plead guilty conditionally under Fed. R. Crim. P. 11(a)(2) to Count Two of the instant indictment (using a firearm during violent crime). Specifically, the Defendant reserves the right to withdraw his guilty plea on this count only if, upon appellate review sought by either party, he prevails on his legal argument that he cannot be convicted and sentenced on Count Two, in addition to being convicted and sentenced on Count One.

His plea agreement also contained a waiver-of-appeal provision:

13. Except as otherwise provided, the Defendant hereby expressly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, and the Defendant further agrees not to contest his sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255. The Defendant, however, reserves the right to appeal the following: (a) issues specified in Paragraph 2, (b) any punishment imposed in excess of a statutory maximum, and (c) any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court.

Portillo's Presentence Report ("PSR") assessed two criminal history points for his commitment as a 12-year-old to the Texas Youth Commission for arson and an additional two points because Portillo was on "parole" from the Youth Commission at the time he committed the federal offenses. Portillo objected to the report, contending that because the juvenile commitment did not involve an adjudication of guilt, it was not a "sentence" as that term is defined in the guidelines. The district court overruled the

objection and adopted the PSR's calculation. The district court sentenced Portillo to consecutive terms of imprisonment on the carjacking charge and the gun charge.

Portillo appeals his sentence, arguing that cumulatively punishing him for carjacking and carrying a gun "during and in relation to any crime of violence" violates double jeopardy. Portillo's double jeopardy argument has been foreclosed by this court's opinion in United States v. Singleton, wherein the court held that double jeopardy was not offended by cumulative punishments under both the carjacking statute and the gun statute:

> "We are satisfied, however, that Congress has made a sufficiently clear indication of its intent to impose cumulative punishments for violations of § 924(c) and all crimes of violence, including 'carjacking', to satisfy the requirements of the Double Jeopardy Clause."

No. 93-3479, 1994 WL 71535, * 8, ___ F.3d ___, ___ (5th Cir. March 10, 1994). Portillo's first point of error is therefore denied.

Portillo also contends that the district court erroneously considered his juvenile commitment in calculating his criminal history score. The government asserts that Portillo has waived the right to appeal his sentence on this ground, relying on the waiver-of-appeal provision of the plea agreement. Portillo responds that the district court did not specifically admonish him concerning the waiver-of-appeal provision and that the waiver was uninformed and thus, invalid.

At the beginning of Portillo's Rule 11 hearing, the court gave Portillo an opportunity to read over the plea agreement and to have Portillo's attorney, Mr. Adams, explain it to him. The agreement

3

itself, which Portillo signed - thus representing that he "understood and agreed to [it] in every respect" - is a three-page letter, consisting of 15 consecutively numbered paragraphs. After Mr. Adams told the court that his client was ready to proceed, the following colloquy took place:

> THE COURT: OKAY, MR. PORTILLO, HAVE YOU HAD A CHANCE TO GO OVER THAT DOCUMENT?
>
> PORTILLO: YES, SIR.
>
> THE COURT: COMPLETELY? I MEAN, THIS TELLS ME, WHAT AGREEMENT HAS BEEN WORKED OUT IN YOUR CASE, AND HOW EVERYTHING IS GOING TO PROCEED. NOW, IS THIS DOCUMENT ACCURATE? IS THIS WHAT'S GOING TO HAPPEN IN THIS CASE? IS THIS YOUR UNDERSTANDING OF WHAT'S GOING TO HAPPEN IN YOUR CASE?
>
> PORTILLO: YES, SIR.
>
> THE COURT: OKAY. MR. ADAMS, ARE YOU FULLY SATISFIED THAT HIS DOCUMENT SETS OUT THE AGREEMENT THAT'S BEEN WORKED OUT, BY YOU, ON BEHALF OF MR. PORTILLO, WITH THE GOVERNMENT?
>
> MR. ADAMS: YES, YOUR HONOR.

The court proceeded to admonish Portillo concerning the rights he was forfeiting by pleading guilty. Although the court did not directly address Portillo's waiver of appeal concerning his sentence, it indirectly mentioned it by exclusion:

> THE COURT: DO YOU REALIZE, THAT BY COMING IN HERE TODAY, AND PLEADING GUILTY, YOU'RE GIVING UP ALL THESE

4

RIGHTS I'VE JUST EXPLAINED TO YOU? NO JURY, NO WITNESSES, NOTHING. *YOU'RE STILL GOING TO HAVE THE RIGHT TO APPEAL THE CONVICTION, SO THAT IF THERE IS AN IMPROPER CASE, IF THERE'S ONE TOO MANY CHARGES, IT'S POSSIBLE THAT ONE OF THESE CHARGES MIGHT BE DROPPED.* BUT, ASIDE FROM THAT, YOU'RE GIVING UP YOUR RIGHT TO A TRIAL, TO A WITNESS, TO CONFRONTING THE -- TO -- TRIAL TO A JURY, TO CONFRONTING THE WITNESSES, ALL THOSE RIGHTS ARE GIVEN UP. DO YOU UNDERSTAND?

PORTILLO:      YES, SIR.

THE COURT:      DO YOU STILL WANT TO GO THROUGH WITH THIS GUILTY PLEA AND GIVE UP THOSE RIGHTS?

PORTILLO:      YES, SIR.

To be valid, a defendant's waiver of his right to appeal must be informed and voluntary. U.S. v. Melancon, 972 F.2d 566, 567 (5th Cir. 1992). A defendant must know that he had a "right to appeal his sentence and that he was giving up that right." Id. at 968.

Portillo's plea agreement informed him of the right to appeal his sentence and that by entering into the plea agreement, he would forfeit that right. Nowhere in the record is there any indication that Portillo did not understand or was confused by the waiver-of-appeal provision. Compare United States v. Baty, 980 F.2d 977, 978-79 (5th Cir. 1992) (defendant's obvious confusion regarding the waiver provision obligated the district court to insure that defendant understood her right to appeal and the consequences of waiving that right). Indeed, the plea agreement was clearly

5

written and relatively short. Moreover, Portillo confirmed that he had read the agreement, understood its contents, and wished to plead guilty. We hold, therefore, that when the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal. Accordingly, Portillo's second point of error is denied, and his sentence is AFFIRMED.[2]

---

[2]Our holding is further supported by the following colloquy from Portillo's sentencing hearing at which Portillo's attorney confirmed his and his client's understanding of and intent to honor the waiver-of-appeal provision:

THE COURT:       . . . [THE PRESENTENCE REPORT] WILL BE SEALED, AND MADE PART OF THE RECORD. AND SHOULD THERE BE AN APPEAL, THIS REPORT WOULD BE MADE AVAILABLE FOR APPELLATE PURPOSES. IS THERE A MOTION BY THE GOVERNMENT JUST WITH THIS -- JUST THE TWO COUNT?

[GOVERNMENT]: YOUR HONOR, I WOULD JUST LIKE TO NOTE, FOR THE RECORD THAT THE PLEA AGREEMENT DOES CALL FOR A NO APPEAL PROVISION. AND APART FROM THAT, YOUR HONOR, I DON'T BELIEVE THAT THERE IS ANYTHING TO DISMISS.

THE COURT:       OKAY.

MR. ADAMS:       THAT IS CORRECT, YOUR HONOR. THE PLEA AGREEMENT HAS BEEN COMPLIED WITH.

THE COURT:       OKAY. THERE IS AN APPEAL WITH REGARD TO THE ISSUE OF THE TWO -- NOT THE SENTENCE, BUT THERE WILL BE AN APPEAL WITH REGARD TO WHETHER THE TWO CONVICTIONS CAN STAND.

MR. ADAMS:       THAT'S CORRECT.

[GOVERNMENT]: YES, SIR.

MR. ADAMS:       YES. . . .

Earlier in the hearing, Portillo's attorney articulated his desire to "[have] the plea agreement that was negotiated," and promised the court that if it held the government to its obligations under the agreement, "there's not going to be an appeal on the sentence[,] and its that simple." We agree with Mr. Adams, it is "that simple;" Portillo will be held to the terms of the agreement to which he pleaded.