**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 95-10587**
**Summary Calendar**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**ANTONIO ARENAS-GUTIERREZ,**

**Defendant-Appellant.**

Appeal from the United States District Court
For the Northern District of Texas

(4:94-CR-97-Y(13))

February 7, 1996

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

### Background

Antonio Arenas-Gutierrez pleaded guilty to maintaining a place for the purpose of storing and distributing cocaine and marijuana. Arenas was sentenced to a term of imprisonment of 78 months and is to be delivered to immigration officials for deportation following the completion of his sentence.

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

An investigation conducted by the Drug Enforcement Agency (DEA) revealed the existence of a multi-kilogram cocaine-distribution operation in Fort Worth, Texas. According to the presentence report (PSR), Pablo Sigala and Lorenzo Sigala were the leaders of the conspiracy. The cocaine was transported from El Paso to Fort Worth and delivered to the Sigala brothers. The Sigalases distributed the cocaine to other members of the conspiracy, who were responsible for storing and selling the cocaine. Arenas, assisted by Carlos Guitierrez-Moreno and Enrique Moreno-Guitierrez, stored and distributed cocaine from Arenas' residence.

The PSR also stated that Ruben Munoz, the Sigalases' cocaine supplier, sent Sabino Munoz and Officer Rangel, an undercover agent, to Fort Worth to collect drug proceeds from the Sigalases. Munoz and Rangel met with the Sigalases and they prepared a list of co-conspirators who owed drug proceeds and/or cocaine to the Sigalases. The group proceeded to several residences to collect money or retrieve cocaine. The group went to the residence of Arenas located at 2032 Brooks Street, and Pablo Sigala delivered two kilograms of cocaine to an individual known as "Poncho." Arenas was present during the delivery. According to the factual resume of Pablo Sigala, he had delivered cocaine to that residence on several occasions. The resume also indicated that Arenas was responsible for distributing the cocaine received by "Poncho" from Sigala.

Agents executed a search warrant at the Brooks Street residence and discovered 3,900 grams of marijuana and a semi-automatic pistol in a dresser drawer in the bedroom occupied by Arenas. Enrique Moreno-Guitierrez and Carlos Guitierrez-Moreno were found sleeping in another bedroom where a semi-automatic pistol was found. In a large hole in the floor of the common hallway, agents located a toolbox containing 82 grams of cocaine. Agents discovered several scales which are used to weigh drugs in a tool shed located in the backyard of the residence. The three men were arrested. The probation officer who prepared Arenas' PSR stated that, according to Pablo Sigala's factual resume, Enrique Moreno-Guitierrez admitted that he was in the residence to protect the cocaine from robbers.

In the factual resume supporting his plea agreement, Arenas admitted that he and others had used the residence to store and distribute cocaine and marijuana. He also acknowledged that he was present when Pablo Sigala came to the residence and delivered approximately two kilograms of cocaine to another person.

The PSR recommended that Arenas be held accountable for the two kilograms of cocaine delivered to his residence as well as the 82 grams of cocaine and 3,900 grams of marijuana seized from his residence. The probation officer converted the cocaine to its marijuana equivalency because different types of drugs were involved in the offense. Based on that calculation, the total amount of drugs involved in the offense was 420.3 kilograms of

3

marijuana, which resulted in Arenas receiving a base offense level of 28.

The PSR also recommended that the offense level be increased by two levels because of Arenas' possession of a dangerous weapon. It further recommended that Arenas receive a credit for the acceptance of responsibility, which resulted in his receiving a total offense level of 27. Based on his criminal history category of I, the recommended guideline sentencing range was 70 to 87 months.

In his objections to the PSR, Arenas argued that he was not a participant in the conspiracy and that he had no connection with the other co-conspirators, except that he resided with Carlo and Enrique. Arenas also objected to the recommendation that the offense level be increased for possession of a firearm.

At the sentencing hearing, Arenas acknowledged that he had stipulated to the facts contained in his factual resume, which included an admission that he was present when Pablo Sigala delivered two kilograms of cocaine to his residence. However, he argued at the sentencing hearing that he should not be held responsible for the two kilograms of cocaine.

The district court overruled Arenas' objections based on the reasons given by the probation officer in the addendum to the PSR. Arenas did not provide any additional evidence to rebut the PSR findings although the district court afforded him the opportunity to do so.

## Opinion

The Government argues that Arenas' appeal should be dismissed because he waived his right to appeal his sentence in his plea agreement with the Government.

In response to the Government's argument, Arenas argues in his reply brief that he is entitled to appeal because the district court failed to sentence him within the correct guideline range. Arenas also argues that the appeal waiver was not specifically explained to him in court and that he did not understand the consequences of his waiver. Arenas further argues that the district court also required him to sign a "Notice of Right to Appeal," a document that expressly stated that he had a right to appeal.

"[A] defendant may, as part of a valid plea agreement, waive his statutory right to appeal his sentence." **United States v. Melancon**, 972 F.2d 566, 568 (5th Cir. 1992). To be valid, a defendant's waiver of his right to appeal must be informed and voluntary. **United States v. Portillo**, 18 F.3d 290, 292-93 (5th Cir.), cert. denied, 115 S. Ct. 244 (1994).

> When the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal.

**Id**. at 293.

Arenas' plea agreement states that his sentence would be determined by the district court under the sentencing guidelines

5

and that no one could predict his sentence until the completion of the presentence investigation. The agreement further provides that Arenas would not be permitted to withdraw his guilty plea in the event that the applicable guideline range as recommended by the Unites States Probation Officer or as finally determined by the District Judge was higher than expected. The plea agreement also contains the following provision:

> **VI. WAIVER OF RIGHT TO APPEAL SENTENCE:** The Defendant understands that under the provisions of Title 18, United States Code, § 3742 that he has the right to appeal from the sentence imposed by the District Judge presiding in this case under certain circumstances. Being so advised, the Defendant hereby waives and gives up his right to appeal from any sentence imposed by the District Judge presiding in the case, except that the Defendant expressly reserves his right to appeal from the sentence imposed if the District Judge presiding in this case departs upward from the applicable guideline range.

During the Rule 11[1] hearing on March 6, 1995, the district court again advised Arenas that his sentence could not be determined until after the preparation of the PSR and that the court was not bound by any stipulation between Arenas' counsel and the Government. The district court also advised Arenas that "[y]ou have the right to appeal the sentence that the Court imposes unless you waive that right." Arenas indicated that he understood the court's admonitions. Arenas confirmed that the entire plea agreement had been read to him prior to his signing the document. Arenas agreed that all of the terms of the agreement were contained

---

[1] Fed. R. Crim. P. 11.

in the document and that he was voluntarily and freely entering into the plea agreement. The district court did not specifically address the waiver of appeal provision.

The trial judge found that Arenas voluntarily entered into the plea agreement which contains the waiver provision. At the sentencing hearing on June 19, 1995, the district court advised Arenas at the conclusion of the proceeding that he was entitled to appeal his sentence. The district court also required Arenas to sign a document that contained a written notice of his right to appeal.

The effectiveness of the waiver of the right to appeal in the plea agreement in this case is controlled by our decisions in **Portillo** and **Melancon** cited earlier. In **Portillo**, the defendant made the same contention as Arenas here that the waiver of the right to appeal was not specifically addressed in the Rule 11 hearing. However, in **Portillo** we held that where "the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal." 18 F.3d at 292-93. Similarly, in **Melancon** the defendant contended that the "knowingness" of his waiver of the right to appeal was negated by the district court's misstatement at sentencing that he had the right to appeal. Our Court squarely rejected this contention:

7

> The court's statements ... were made four months after Appellant entered into the plea agreement with the Government; they could not have influenced Appellant's decision to plead guilty. Furthermore, any alleged uncertainty on behalf of the district court as to the legality of the agreement does not affect our determination that Appellant's waiver was voluntary, knowing, and permissible.

972 F.2d at 568.

Accordingly, we hold that Arenas waived his right to appeal in this case and that this appeal should, accordingly, be DISMISSED.