# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 8, 2022

Lyle W. Cayce
Clerk

No. 21-40174
Summary Calendar

Owen Garth Hinkson,

*Petitioner—Appellant*,

*versus*

United States of America,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:18-CV-64

Before King, Costa, and Ho, *Circuit Judges*.

Per Curiam:*

Owen Garth Hinkson, proceeding *pro se*, appeals from the denial of his petition for the writ of *coram nobis* seeking to vacate his 1999 guilty plea for illegal reentry after deportation. For the following reasons, we AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-40174

## I.

Owen Garth Hinkson, a Jamaican citizen, pleaded guilty on June 14, 1999, to illegal reentry after deportation in violation of 8 U.S.C. § 1326(a). The guilty plea followed Hinkson's arrest after he was found with more than 100 pounds of marijuana in the car he was driving. Additionally, relevant to Hinkson's guilty plea is his 1987 guilty plea in Massachusetts state court for assault and battery of a police officer in violation of MASS. GEN. LAWS ch. 265, § 13D.[1] Based on the 1987 conviction, the district court implicitly sentenced Hinkson under 8 U.S.C. § 1326(b)(2), which states that when an alien's "removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be . . . imprisoned not more than 20 years." Hinkson's plea agreement stated: "the Defendant understands that (s)he may receive a sentence of imprisonment of not more than twenty (20) years." Hinkson's pre-sentence report stated that the statutory maximum for Hinkson's sentence was 20 years. At Hinkson's plea hearing, the court again informed Hinkson that he "could receive a sentence of imprisonment of not more than twenty years" and Hinkson stated he understood.

Hinkson's guilty plea also included an appellate waiver, which states: "With the exception of Sentencing Guidelines determinations, Defendant waives any appeal, including collateral appeal under 28 U.S.C. § 2255, of any

---

[1] Hinkson argues, with some factual support, that this 1987 conviction was vacated in 2005. In a later criminal case involving Hinkson, the Northern District of Georgia found that the conviction had indeed been vacated. *United States v. Hinkson*, No. 1:17-cr-WSD-AJB, 2017 U.S. Dist. LEXIS 145486, at *3 (N.D. Ga. Sept. 8, 2017). This vacatur is one of the two theories presented by Hinkson for why the writ of *coram nobis* should be issued. However, because we hold that the petition for the writ of *coram nobis* was properly denied even if the 1987 conviction had been vacated, we need not determine whether the vacatur actually occurred.

No. 21-40174

error which may occur surrounding substance, procedure, or form of the conviction and sentencing in this case."

After pleading guilty, Hinkson was sentenced to 110 months' imprisonment, followed by three years supervised release. After serving his sentence, Hinkson was deported from the United States for the fifth time. As part of Hinkson's guilty plea, the government agreed to drop charges for conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Hinkson has since received two additional convictions for illegal reentry of a previously deported alien; both convictions viewed his maximum sentence as being set by 8 U.S.C. § 1326(b)(2) in light of the 1999 conviction, which Hinkson attacks with the instant petition. *Hinkson*, 2017 U.S. Dist. LEXIS 145486, at *3-4. Hinkson is currently completing his prison term based on the latest conviction (from 2017) but has completed his sentence for the 1999 conviction that is the subject of the instant case.

Hinkson bases his petition for the writ of *coram nobis* on his assertion that his conviction and sentence contemplating a 20-year maximum sentence under 8 U.S.C. § 1326(b)(2) is invalid.[2] This is so, he says, for two similar reasons: (1) the 1987 Massachusetts conviction, which served as the base aggravated felony for the enhancement, has been vacated, and (2) that the 1987 Massachusetts conviction can no longer stand as a qualifying aggravated felony under the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct.

---

[2] Hinkson additionally argues that his sentence is invalid because the indictment only stated a charge for 8 U.S.C. § 1326(a), and did not include § 1326(b)(2). This argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998), which held that § 1326(b)(2) "is a penalty provision" that "does not define a separate crime" and that thus "neither the statute nor the Constitution require the Government to charge the factor . . . in the indictment."

1204, 1223 (2018). "The writ of *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the criminal conviction, and that the challenged error is of sufficient magnitude to justify the extraordinary relief." *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996). The writ is the "criminal-law equivalent" of a "Hail Mary pass," *United States v. George*, 676 F.3d 249, 251 (1st Cir. 2012), and shall only issue "to correct errors resulting in a complete miscarriage of justice," *Jimenez*, 91 F.3d at 768. When a district court denies the writ, "we review factual findings for clear error, questions of law de novo, and the district court's ultimate decision to deny the writ for abuse of discretion." *Santos-Sanchez v. United States*, 548 F.3d 327, 330 (5th Cir. 2008), *vacated on other grounds*, 559 U.S. 1046 (2010).

We additionally must consider Hinkson's petition in light of the appellate waiver contained in his plea agreement. So long as "the waiver is informed and voluntary," a defendant can waive any and all post-conviction relief, including relief under 28 U.S.C. § 2255 (which codifies the similar writ of *habeas corpus*). *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). While such a waiver is "most familiarly associated with attempts to secure *habeas corpus* relief," it applies with the same force to the substantially similar writ of *coram nobis* (whose primary difference is the fact that "custody no longer attaches and liberty is no longer at stake"). *George*, 676 F.3d at 257; *see also United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) ("The conventional understanding of 'collateral attack' comprises challenges brought under . . . 28 U.S.C. § 2255, as well as writs of *coram nobis*."); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) ("Because of the similarities between *coram nobis* proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in *coram nobis* cases.")

Further, we have held that legal developments post-dating the guilty plea are not sufficient grounds for vitiating an appellate waiver. *United States v. Barnes*, 953 F.3d 383, 386–88 (5th Cir. 2020); *see also Brady v. United States*, 397 U.S. 742, 757 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."). Therefore, the appellate waiver is valid here. And there is ample evidence that Hinkson "read and underst[ood] his plea agreement, and that he raised no question regarding a waiver-of-appeal provision." *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994). Therefore, Hinkson can only make very limited challenges to his plea agreement and sentence. His writ of *coram nobis* petition is not one of them, and so Hinkson "will be held to the bargain to which he agreed." *Id.*

Hinkson does, however, make two relevant challenges to the effectiveness of the appellate waiver and corresponding plea. The first is that he received ineffective assistance of counsel that "directly affected the validity of th[e] waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). The second is that the district court violated Rule 11 by erroneously informing him during his plea hearing that his statutory maximum sentence would be 20 years (when it should have been 10 years based on his assertion that his 1987 conviction did not qualify as an aggravated felony for § 1326(b)(2) purposes). Neither argument succeeds.

A claim of ineffective assistance of counsel requires proof "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Hinkson's claim falls at the first hurdle. Hinkson's 1987 conviction was not allegedly vacated until 2005. The Supreme Court did not hold that his crime of conviction (assault and battery of a police officer) could not serve as an aggravated felony for sentencing purposes until 2018. Both events occurred

well after Hinkson's guilty plea in 1999. Hinkson's counsel was not required to predict these events when advising Hinkson on his plea deal. "Clairvoyance is not a required attribute of effective representation." *United States v. Fields*, 565 F.3d 290, 295 (5th Cir. 2009) (quoting *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. Unit A 1981)).

Similarly, the district court did not err by failing to glean these future developments when advising Hinkson of the "maximum possible penalty" under Rule 11. Fed. R. Crim. P. 11(b)(1)(H). Just as with the ineffective assistance of counsel standard, Rule 11 "does not require a district court to predict and apply the holdings of the Supreme Court before they are announced." *United States v. Lucas*, 282 F.3d 414, 420 (6th Cir. 2002), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 384 n.8 (6th Cir. 2002). Rule 11 is satisfied "[a]s long as the [defendant] 'understood the length of time he might possibly receive.'" *United States v. Jones*, 905 F.2d 867, 868 (5th Cir. 1990) (second alteration in original) (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)). At the time that Hinkson made his guilty plea, he was so advised by the district court. His guilty plea, appellate waiver and all, is valid, and the district court did not abuse its discretion by finding that the waiver bars his petition for the writ of *coram nobis*.[3]

## II.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[3] Because we find that the appellate waiver in Hinkson's guilty plea bars his petition for the writ of *coram nobis*, we need not consider the alternate grounds that the district court found for its denial (namely, that it was procedurally deficient, fatally infected by delay, or that Hinkson did not suffer from collateral consequences requiring *coram nobis* relief).