**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 30, 2011

Lyle W. Cayce
Clerk

No. 10-50652

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

DAVID MICHAEL STANSON,

                              Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. 5:09-CR-124

Before SMITH, BENAVIDES, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

David Stanson appeals his sentence for distribution of child pornography. Because the appeal is barred by the plea agreement, we dismiss the appeal.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50652

I.

Stanson pleaded guilty of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). The plea agreement included a waiver of his right to appeal his sentence. The district court discussed the plea agreement with Stanson:

> THE COURT: Okay. And have you gone through this plea agreement; do you understand all of your constitutional rights that are listed in the plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: In order to hope that you are not sentenced to the maximum of 25 years, are you willing to give up those constitutional rights of trial by jury, burden of proof on the government, cross-examination by Mr. Carter of the live witnesses against you and your rights direct and indirect appeal?
>
> THE DEFENDANT: Yes, sir. I thought it was 20 years, sir.
>
> THE COURT: I'm sorry. You may be right. 20 years. You're right.

Stanson was assessed a five-level enhancement pursuant to United States Sentencing Guidelines § 2G2.2(b)(3)(B) ("the distribution enhancement"), which provides for an enhancement where a defendant distributed child pornography "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." Stanson challenges the application of the enhancement on the ground that the peer-to-peer file sharing program he used—Limewire—provides no tangible benefit to a user who chooses to share his own file collection with other users, as Stanson did. Stanson also argues that he did not knowingly and voluntarily waive the right to appeal his sentence.

No. 10-50652

## II.

We review the validity of an appeal waiver *de novo*. *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005). A defendant may waive his right to appeal if the waiver is made knowingly and voluntarily. *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005). "A defendant must know that he had a right to appeal his sentence and that he was giving up that right." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) (quotation marks and citation omitted). A defendant's waiver is knowing and voluntary if he indicates that he has read and understood the plea agreement, which contains an "explicit, unambiguous waiver of appeal." *McKinney*, 406 F.3d at 746. If the record "clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal." *Id.* (quotation marks and citation omitted).

## III.

Stanson does not dispute that the plain text of the plea agreement includes a waiver of the right to appeal his sentence. Rather, he contends that the district court failed adequately to ascertain whether he had read and understood the appeal waiver provision; as a result of the court's failure, Stanson argues, he did not knowingly and voluntarily waive the right to appeal his sentence.

The record does not support Stanson's assertions. He was asked directly by the district court whether he had "gone through this plea agreement" and whether he was "willing to give up those constitutional rights of trial by jury, burden of proof on the government, cross-examination by Mr. Carter of the live witnesses against you and your rights direct and indirect appeal?" Stanson responded to each question with an unequivocal "Yes, sir." Although the court

No. 10-50652

did not mechanically ask Stanson whether he had read the plea agreement and understood its terms, the essence of that inquiry was made.

Furthermore, the record as a whole "clearly indicates that [Stanson] has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision." *Id.* The district court sufficiently inquired whether Stanson had read and understood the terms of the agreement, including the fact that he was waiving his right to appeal. Stanson's response that he agreed to the factual basis set forth in the agreement, as well as the fact that he spoke up to correct the court as to the maximum sentence he faced under the agreement, indicates that he had read and understood the agreement.

Stanson also attempts to parse the precise language employed by the court, arguing that the court asked *only* whether he understood the *constitutional* rights that he was giving up—and not his statutory right to challenge his sentence on appeal. As an initial matter, this does not alter our conclusion that the record as a whole indicates that Stanson read and understood the plea agreement, including the waiver-of-appeal provision.

Additionally, even if we were to accept Stanson's hyper-textualist approach, his conclusion that he was questioned only about his constitutional rights does not necessarily follow. The precise question posed by the court was the following:

> In order to hope that you are not sentenced to the maximum of 25 years, are you willing to give up those constitutional rights of trial by jury, burden of proof on the government, cross-examination by Mr. Carter of the live witnesses against you and your rights direct and indirect appeal?

Stanson argues that the phrase "rights direct and indirect appeal" relate back to the phrase "constitutional rights." That is not, however, the best reading of the question. Given the repeated use of the word "rights," the rational reading

4

of the text is that Stanson was asked about *both* his constitutional rights and his additional rights of direct and indirect appeal—otherwise the second use of the word "rights" would be superfluous.

Accordingly, Stanson's appeal is barred by the terms of his plea agreement, and we do not reach the issue of whether the distribution enhancement was properly applied. The appeal is DISMISSED.