**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 28, 2011

No. 10-50699
consolidated with
No. 10-50700

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

EDGAR NARVAEZ,

Defendant – Appellant

Appeals from the United States District Court
for the Western District of Texas
USDC Nos. 5:08-CR-37; 5:09-CR-412

Before JONES, Chief Judge, HAYNES, Circuit Judge, and ENGELHARDT, District Judge.[*]

PER CURIAM:[**]

Defendant-Appellant Edgar Narvaez appeals his sentences for forgery and conspiracy to commit healthcare fraud, contending that the district court made several sentencing errors. Because we conclude that the appellate waiver in Narvaez's plea agreement bars this appeal, we DISMISS it.

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50699, consolidated with No. 10-50700

## I. Facts and Procedural History

The sentencing-related issues in this appeal arise out of two separate criminal incidents involving Narvaez. In the first, a jury convicted Narvaez of forging the signature of a United States bankruptcy judge on a document that purportedly discharged Narvaez from a then-pending bankruptcy proceeding. Narvaez used the forged document to purchase a vehicle. Narvaez received a fifteen-month sentence.

The second incident concerns Narvaez's involvement in a fraudulent Medicaid scheme that included Narvaez, his wife, and a third party. Together, they formed and operated Narvaez Family Provider Services ("NFPS"). NFPS eventually obtained a Medicaid provider license and contract by making fraudulent misrepresentations and material omissions in its application. NFPS then systematically falsified client records, forged physician certifications, and billed Medicaid for unauthorized and unprovided services.

A grand jury later indicted Narvaez on ten counts of healthcare fraud and two counts of conspiracy to commit healthcare fraud. Narvaez entered a plea agreement in which he pled guilty to the conspiracy counts. Narvaez also agreed to forfeit over $400,000 in proceeds obtained through the NFPS scheme.

Narvaez's plea agreement includes an appeal waiver. In relevant part, it provides, in a section titled "Defendant's Waiver of Right to Appeal or Challenge Sentence," that Narvaez "voluntarily and knowingly waive[d] the right to appeal his sentence on any ground" or "to contest his sentence or the manner in which it was determined in any post-conviction proceeding." The plea agreement carves out two exceptions to this broad waiver: claims based on ineffective assistance of counsel and claims based on prosecutorial misconduct. Notably, the plea agreement states that Narvaez waived his appeal rights despite "knowing that his sentence ha[d] not yet been determined by the [district court]."

2

No. 10-50699, consolidated with No. 10-50700

In this appeal, Narvaez raises three broad issues. He argues that the district court improperly used the gross total of Medicaid payments to NFPS to calculate the amount of loss for length-of-sentence and restitution purposes. He also believes that the district court impermissibly ordered his conspiracy sentence to run consecutively with his forgery sentence. As he must for the court to reach these ostensible errors, Narvaez attacks his appeal waiver, contending that it is invalid because the district court failed to ensure that Narvaez knowingly and voluntarily waived his right to appeal.

## II. Standard of Review

Courts generally review de novo the preclusive effect of an appellate waiver. *See, e.g.*, *United States v. Jacobs*, 635 F.3d 778, 780-81 (5th Cir. 2011) (citing *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002) (noting that the issue is a question of law)).[1] Just as defendants may waive constitutional rights, they may also waive statutory rights, such as the right to appeal, provided that the waiver is "informed and voluntary." *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992). A defendant's understanding of a waiver's plain text is relevant to determining a waiver's validity, but ultimately "a defendant's waiver of [his] right to appeal deserves and, indeed, requires the special attention of the district court." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992). Because waiving the right to appeal necessarily entails accepting an "unknown and unannounced"—and therefore potentially erroneous or illegal—sentence, the district court must "[e]nsure that the defendant fully understands [his] right to appeal and the consequences of waiving that right." *Id.* Narvaez concedes that, if valid, the appeal waiver forecloses the substantive issues he seeks to raise on appeal.

---

[1] As we discuss in more detail below, appeal-waiver challenges based on purely technical errors under Federal Rule of Criminal Procedure 11 may be reviewed for plain error.

No. 10-50699, consolidated with No. 10-50700

An unpreserved challenge to the validity of an appeal waiver is reviewed under different standards depending on the nature of the challenge. As we explain more fully below, Narvaez's challenge, while couched as one attacking the waiver's validity, is in substance an attack on the court's conduct of the Rule 11 plea colloquy. *See United States v. Cuevas-Andrade*, 232 F.3d 440, 446 (5th Cir. 2000); FED. R. CRIM. P. 11(b)(1)(N) (requiring district courts to "inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack [his] sentence"). A defendant's claim that he unknowingly or involuntarily waived his right to appeal based solely upon a technical Rule 11 error falls outside of the class of appellate waiver challenges subject to de novo review. *See* FED. R. CRIM. P. 11(h) (harmless error) & 52(b) (plain error); *United States v. Vonn*, 535 U.S. 55 (2002).

Deficiencies in the Rule 11 colloquy to which no contemporaneous objections are lodged are reviewed for plain error in light of the record as a whole.[2] *See Vonn*, 535 U.S. at 59, 73-76; *United States v. Oliver*, 630 F.3d 397, 411-12 (5th Cir. 2011), *petition for cert. filed*, No. 11-5508 (Jun. 24, 2011) (applying plain-error review to Rule 11(b)(1)(N) challenge and citing *Vonn*); *United States v. Reyes*, 300 F.3d 555, 558-59 (5th Cir. 2002) (analyzing Rule 11 challenge under plain-error review post-*Vonn*).[3] To show plain error, a

---

[2] To the extent our prior cases suggest that Rule 11 defects are reviewed for harmless error regardless of whether a defendant raised an objection below, *see, e.g.*, *Cuevas-Andrade*, 232 F.3d at 443 n.2 (citations omitted), we clarify that the subsequent Supreme Court decision in *Vonn* directs plain-error review for "silent defendants." 535 U.S. at 58.

[3] Our sister circuits, too, have applied *Vonn* to alleged Rule 11(b)(1)(N) errors. *See United States v. Goodson*, 544 F.3d 529, 539-41 (3d Cir. 2008); *United States v. Borrero-Acevedo*, 533 F.3d 11, 13-18 (1st Cir. 2008); *United States v. Sura*, 511 F.3d 654, 660-63 (7th Cir. 2007); *United States v. Murdock*, 398 F.3d 491, 495-99 (6th Cir. 2005); *United States v. Arellano-Gallegos*, 387 F.3d 794, 796-97 (9th Cir. 2004); *United States v. Edgar*, 348 F.3d 867, 870-73 (10th Cir. 2003); *see also Sotirion v. United States*, 617 F.3d 27, 38 (1st Cir. 2010) (holding that a district court's erroneous calculation of a guidelines range "is precisely the kind

No. 10-50699, consolidated with No. 10-50700

defendant must demonstrate that the district court made "(1) . . . an error, (2) that is clear and obvious, and (3) that affects his substantial rights." *Reyes*, 300 F.3d at 558 (citation omitted). Additionally, "because relief on plain-error review is in the discretion of the reviewing court, a defendant has the further burden to persuade the court that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Vonn*, 535 U.S. at 63 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (alteration in original). "[A] defendant's substantial rights are affected if the district court's Rule 11 error[] 'may reasonably be viewed as . . . a material factor affecting [the defendant's] decision to plead guilty.'" *Cuevas-Andrade*, 232 F.3d at 443 (quoting *United States v. Bachynsky*, 934 F.2d 1349, 1360 (5th Cir. 1991) (en banc)) (some alterations and omission in original); *cf. United States v. Dominguez Benitez*, 542 U.S. 74, 84 (2004) (holding, in the context of "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11," that the defendant "must show a reasonable probability that, but for the error, he would not have entered the plea").

### III. Discussion

The Government contends that Narvaez knowingly and voluntarily waived his right to appeal and that the plea colloquy was sufficient, pointing out that the waiver's language unambiguously provides notice that, in signing the plea agreement, Narvaez broadly waived his right to appeal almost any aspect of the district court's then-unannounced sentence. Narvaez signed that agreement

---

of 'garden variety' claim of error contemplated by [that defendant's] appellate waiver" and thus failed to justify finding that a "miscarriage of justice" or plain error occurred).

We note that "the plain error standard does not apply when a defendant's challenge to the knowing or voluntary nature of a waiver does not involve the district court's compliance with the plea colloquy required by [Rule 11]." *Goodson*, 544 F.3d at 540 n.9. If a defendant "claims that he was misled or coerced into entering the [plea] agreement, or that he was incompetent when he signed the waiver, [he] challenges the validity of the waiver itself, not the Rule 11 colloquy." *Id.*

only hours before his rearraignment. There, the district court noted that Narvaez had waived his right to appeal, confirmed that Narvaez had conferred with counsel regarding the Government's evidence, and gave Narvaez the opportunity to ask questions.[4] Accordingly, the Government argues that the appellate waiver bars Narvaez from pursuing this appeal.

Narvaez urges the court to look past the waiver's express language. He argues that even clearly written waivers are unenforceable when a district court takes insufficient steps to apprise a defendant of his waiver's contents and consequences. Narvaez also asserts that the district court's allegedly generic, passing reference to a nonspecific waiver of "appeal" failed to ensure that he knowingly and voluntarily waived his right to appeal. What is notable is what Narvaez does not say: he does not say that he did not understand his plea agreement. Nor does he contend that he would have done something differently if the district judge had recited some "magic words." In sum, he does not claim that the district court's limited discussion of the waiver somehow impacted his decision to enter the plea agreement. Nor does he contend that he involuntarily waived his appeal rights or did so without understanding the consequences.[5]

Narvaez's attack rests solely upon the district court's alleged failure to sufficiently ensure that his waiver was informed and voluntary during the plea

---

[4] The Government does not argue that Narvaez's attendance at his wife's arraignment supports a finding of waiver, but that attendance may explain why the experienced district judge did a relatively shorthand version of the plea colloquy. At the beginning of the plea hearing, the district judge said: "[Y]ou've been here this morning when your wife and the other people have pled guilty?" Narvaez said he had. "Is that generally what you want to do? A: Yes, sir."

[5] In any case, such an argument would ring hollow. As the district court observed, Narvaez is highly educated; he holds a mechanical engineering degree from the University of Texas at Austin. Narvaez also was represented by counsel, whose effectiveness he does not challenge here, when he signed the plea agreement, as well as during rearraignment and sentencing. We therefore are not presented with a case involving a defendant of limited education or deficient representation where the result might be quite different.

No. 10-50699, consolidated with No. 10-50700

colloquy.  Counsel for Narvaez, however, did not "raise[] any contemporaneous objections to the district court's [ostensible] failure to comply with Rule 11." *Cuevas-Andrade*, 232 F.3d at 445-46 n.3.  We thus review for plain error.

Examining the record, we conclude that any defects in the Rule 11 plea colloquy did not affect Narvaez's substantial rights.  While we agree that the better practice is to ask expressly if the defendant read and understood the plea agreement,[6] here the district court asked several questions that probed Narvaez's understanding of the plea agreement's terms.  Among other things, the district court asked Narvaez to confirm the veracity of the factual allegations against him, his understanding that he was "giv[ing] up all of those rights of jury trial, confrontation and cross-examination of witnesses and appeal," the voluntariness of his plea, his opportunity to confer with counsel, and the wrongfulness of his conduct.  The district court also apprised Narvaez of the nature of the charges against him, of the possible range of penalties associated with those charges—including restitution and the possibility that the district court might order consecutive sentences, and of the nonbinding effect of the government's recommendation that the district court impose a sentence on the low end of the applicable sentencing range.  Taken together, the questions asked and information provided are sufficient for us to conclude that Narvaez has not shown that his substantial rights were violated.  *See* FED. R. CRIM. P. 11(b).  "Although the [district] court did not mechanically ask [Narvaez] whether he had read the plea agreement and understood its terms, the essence of that

---

[6] We echo the *Cuevas-Andrade* court's reminder that district courts "be vigilant in performing their duties under Rule 11" and "'follow the script' to assure that the plea is voluntary and that the defendant's substantial rights have been safeguarded.  Strict compliance with Rule 11 also conserves judicial resources by precluding appeals such as this one, where the technical violations do not materially affect the defendant's decision to plead guilty."  232 F.3d at 445-46 n.3.  This reminder extends to counsel, who as officers of the court have a duty to assist the court in carrying out its Rule 11 obligations.  *Id.*

inquiry was made." *United States v. Stanson*, No. 10-50652, 2011 WL 3822013, at *2 (5th Cir. Aug. 30, 2011) (unpublished).[7]

Critically for our purposes here, the record as a whole demonstrates that Narvaez read and understood his plea agreement and that he failed to raise any questions concerning the appellate waiver. *See Vonn*, 535 U.S. at 59; *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) (citing *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)). At most, then, Narvaez complains of a technical Rule 11 deficiency that did not affect his substantial rights. As such, he fails to show plain error. Accordingly, we hold Narvaez to his bargain and conclude that he waived his right to bring this appeal.[8]

### IV. Conclusion

APPEAL DISMISSED.[9]

---

[7] Although *Stanson* is unpublished, it represents a reasoned analysis of a similar factual pattern, so we find it persuasive on this point.

[8] This holding extends to Narvaez's restitution objections. The plea agreement listed restitution as one of the potential penalties that the district court could impose as part of Narvaez's sentence, and the district court specifically mentioned that possibility—as well as its discretion to later set the amount of restitution—at the Rule 11 hearing. Narvaez nonetheless waived his right to challenge his sentence "on any ground," and we have long held that "[r]estitution is a criminal penalty and a component of the defendant's sentence." *United States v. Hayes*, 32 F.3d 171, 172 (5th Cir. 1994). This case therefore does not implicate the potential restitution-order exception to general appellate waivers suggested by *United States v. Smith*, 528 F.3d 423, 424 (5th Cir. 2008) ("declin[ing] to address the issue," previously raised in a series of unpublished opinions, "of whether a general appeal waiver bars review of a restitution order when the plea agreement does not discuss restitution").

[9] Narvaez contends in a footnote, for issue-preservation purposes, that appeal waivers made without knowledge of the rights being sacrificed are neither knowing nor voluntary. We decide above that Narvaez's waiver *was* knowing and voluntary and that, accordingly, he understood that by entering the plea agreement he waived his right to bring this appeal. In any case, we have consistently rejected Narvaez's broad, general objection to the use of appeal waivers. *See, e.g.*, *Melancon*, 972 F.2d at 568 (holding that "a defendant may, as part of a valid plea agreement, waive his statutory right to appeal his sentence"); *see also United States v. Burns*, 433 F.3d 442, 446-47, 450-51 (5th Cir. 2005) (upholding an appellate waiver over defendant's objection that he could not waive a right that did not exist at the time he entered the waiver). Thus, we agree that such a generic attack is foreclosed in our circuit.